Good morning, ladies and gentlemen, and welcome to the United States v. Flores-Rodriguez. I'm Robert Rexrod, Federal Defenders of San Diego, for Israel Flores-Rodriguez. Mr. Flores-Rodriguez's 63-month sentence is far in excess of the 24-month sentence that was authorized by the indictment in this case. Under this Court's recent case in Covey v. Sandoval, the timing of a person's deportation is a necessary element that must be pled and proven in order to do so. In this case, the only deportation, as the government points out, proven at trial, did postdate the conviction that the judge found to raise the statutory maximum. However, the deportation, the timing of the deportation, was not alleged in the indictment. And I one of my main arguments is that the deportation, the timing of the deportation there's a statutory maximum of 24 months because that was all that was alleged in the indictment, and anything that happened at trial, whatever was proven at trial, nonetheless, there's a 24-month statutory maximum because there's structural error because the indictment itself only alleged an offense that carried a statutory maximum of 24 months. Covey and — Haven't we rejected that argument? I certainly hope not, and I don't believe so. Okay. I thought that's where we get back into the almondars, Torres, that when it comes to the sentencing, you know, they don't have to prove up the prior conviction and all that stuff. That this Court has certainly rejected. Just to be clear, there are two facts that have to be proven under Subdivision B of 1326 to increase a person's statutory maximum for illegal reentry from two to either 10 or 20 years, depending on the nature of the conviction. Those two things are a prior conviction, which is controlled by almondars, Torres, and this circuit has obviously recognized that almondars, Torres remains good law after Shepard, although I do raise that issue as well. The second thing that must be proven is the timing of the deportation. Without the timing of the deportation, no statutory maximum can be increased under Subdivision B. Covey and Sandoval, as opposed to the other. But why can't the judge make that? I mean, if you can't challenge under almondars, Torres, the fact of the prior conviction, why can't the judge, as a matter of sentencing fact-finding, look at the date of the prior conviction. He's got the date of the illegal reentry charged in the indictment. See that the reentry is subsequent to the deportation and the prior conviction and conclude that the enhancement applies. Thankfully, from my position, I'd be reduced to the theory or the doctrine of constitutional doubt. That's not the factual situation in this case. The date of the deportation, as opposed to a deportation, the date of the deportation is not alleged in the indictment against Mr. Flores Rodriguez. And that is what I'm basing my argument on, is because the date of the deportation is necessary to increase the statutory maximum under Subdivision B, it must be alleged in the indictment. It's call it a sentencing enhancement, call it an element of the crime, call it whatever you will. If it increases a person's statutory maximum under Apprendi, it must be in the indictment. Alito, how is that different from a sentencing judge determining the date of the prior conviction, as in order to consider the prior conviction, you have to necessarily determine that it was prior to the date of the current federal conviction on which the defendant is about to be sentenced? I'm not sure if I could have stated it any better. But the prior conviction exception, it's the fact of the conviction that increases the statutory maximum. But it inherently has to be prior. That's where I'm having a hard time following your argument. It seems to me that this is no different from determining that the defendant had previously suffered a conviction. Otherwise, it can't be considered. I agree. How a person, how we find that it's the conviction is prior is for the first time discussed squarely by this Court in Covey and Sandoval. And that timing, the timing of the deportation, as opposed to the timing of the conviction, and you need both of those to make a determination that a conviction was prior. The timing of the deportation, as opposed separate from the conviction, has to be pled and proven to a jury. And that's what didn't occur here. It wasn't alleged in the indictment. And for that reason, even under Zapata, even if the only deportation that was proven at trial did postdate, the fact that it wasn't in the indictment renders this error structural. I'm not sure you're understanding my question, and maybe I'm not articulating it very well. Likely me. Inherent in a determination that a defendant has suffered a prior conviction is a determination by the sentencing court that the conviction was suffered prior to the conviction for this offense for which I'm about to sentence the defendant. How is that any different from making a determination that the deportation for which the jury has now convicted the defendant must have occurred on a particular day? The difference is because under Covey and Sandoval, that the timing of the deportation does not fall within that narrow exception to the rule of apprendi that applies to convictions, in fact, surrounding convictions. Under Covey and Sandoval, the timing of a deportation doesn't fall within that exception. The jury can't convict the defendant of an illegal reentry unless it finds that he has previously been deported. That is correct. Yes. And a court can't enhance a person's sentence based upon a prior conviction unless it determines that the conviction was suffered prior to the date on which he's being sentenced. So what analytically, I'm just not following your argument. I mean, it's a very clever argument, but I'm just not sure that it holds. I believe I understand the Court's question. Maybe I don't, because I keep reverting back to I think I'm just trying to rehash what I've said before. Maybe I didn't mean to get you hung up on this point. Maybe if you've got other points to cover, maybe. That actually is the major point I did want to address. I think until Covey and Sandoval squarely addressed what the timing of the deportation is, when judges made factual findings about prior convictions, I mean, as a logical matter, a district judge always had to reference that against the timing of a deportation or the word prior becomes meaningless. After Covey and Sandoval, however, the issue is how that second determination is made or that second piece of the puzzle is made to increase the statutory maximum under Subdivision B. And following Covey and Sandoval, that timing mechanism can no longer be found by a judge. Because it can no longer be found by a judge. Why does it have to be pled in the indictment? Because this particular case, there's no other way that it could have been found, but what you're arguing is that it has to be pled in the indictment. Yes. And I agree. So what's the authority for that part of it? Covey and Sandoval said the timing of the deportation falls within the general rule of Apprendi. The general rule of Apprendi is that any fact other than a prior conviction needs to be pled in the indictment and proven to a jury beyond a reasonable doubt. Well, you don't have to prove all the facts. You don't have to plead all the facts. You don't have to plead all the facts in the indictment. If a fact is necessary to increase the statutory maximum, it needs to be pled in the indictment. And for that proposition, I would cite Apprendi itself. And this is the United States reporter at PIN Citation 49, Note 15. And this is a quote. The indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted. It is a fact that's essential. The timing of the deportation is an essential fact, whether it be an element or a sentencing factor. It's an essential fact to increase the statutory maximum from two years under Subdivision A to either 10 or 20 years under Subdivision B as an essential fact. And when to go back to the Court's question, when Covey and found that the timing of deportation was a fact that is covered by the general rule of Apprendi, the indictment must attach. And one of the Apprendi rights is an essential fact necessary to increase the statutory maximum has to be pled in the indictment. It wasn't pled in the indictment in this case. That error is structural under this Court's precedent. And Mr. Flores' Rodriguez's statutory maximum was two years, is two years, and the general rule of Apprendi. Kagan. But to get to that, then we have to go to a circuit split between Covey and a more recent case. I'm referring to Lopez. I'm sorry, United States v. Lopez? I believe it is Lopez. Lopez, United States v. Lopez is a case that came after Covey and Sandoval. And at first reading, I knew I was going to have to address Lopez. At first reading, seems to be in some conflict with Covey and Sandoval. There's a couple points I'd like to make on that matter. The sequence of the main cases that have come out are Covey and Sandoval, Lopez, and then I believe it is Zepeda-Martinez, which reaffirms Covey and came out after Lopez, is the sequence. So to my mind, seeing how there's a panel decision after Lopez that didn't recognize Lopez as being in direct conflict with Covey and Sandoval, I think Lopez has to be read in conjunction with Covey and Sandoval if possible. And I believe that there's a principled way to do so. And the reason is this. When you look at the language that the Lopez panel used, they said that the petitioner's argument was foreclosed by Castillo-Rivia. And when you go back to Castillo-Rivia, that is squarely a prior conviction Apprendi argument. That's what the language is. Every time the argument is raised, it's always the two in conjunction. Because the timing, and then in Lopez, and if I could read one quote from Lopez, the whole thing in Lopez reads as follows. Lopez's argument that because Section 1326 requires an alien trial removal to have been subsequent to the prior conviction, Apprendi requires that the temporal sequence of conviction and removal, as distinct from the fact that the conviction itself be proved to a jury beyond a reasonable doubt, is foreclosed by Lopez. Even Lopez uses the sequence, the conviction and the deportation. That doesn't have to be collided in the indictment. This circuit's precedent says that. It does not have to be. It does not. In conjunction. The only way you can read Lopez and Covey and Sandoval as in harmony is Lopez is dealing with an argument that had been previously rejected by this Court, that because there's a timing mechanism in Subdivision B, that somehow the prior conviction exception to Apprendi didn't apply in that case. And that's. Alito. Isn't that, I mean, that's kind of where I was coming from, I think, in my questioning, that the determination of when the prior conviction was suffered is inherent in Almendarez Torres and the ability of the sentencing court to, if you will, take judicial notice of the fact that a prior conviction was suffered. And as long as you, as long as you view those two things as co-joined, as always together, the timing of the conviction and the deportation, if that's the argument, and I believe that's what the Lopez panel was addressing, it's the only way to read that in harmony with what Covey and Sandoval squarely addressed, a case that came before, if the argument is that the timing of the conviction and the timing of the deportation has to be alleged in the indictment and proven to a jury, well, that has been rejected by this Court. The separate question, and I do believe, and this is the principled reason I see to read these cases in harmony, if there's a separate question of forget the prior conviction, it's only the timing of the deportation, and that's the one issue that I see. The final point on that, because I was trying to figure out how to reconcile these cases, it's interesting. Lopez relies on Castillo. Castillo relies on a case called Pacheco-Zapata, I believe. The first name is definitely Pacheco. When you go back to the Covian case, when they reject the separate argument that's made by the petitioner in Covian that the prior conviction has to be alleged in the freestanding argument that the date of the deportation is subject to the general rule of apprendi. And I'm far over my time. Thank you. Good morning. May it please the Court. Kyle Hoffman for the United States. I have to confess, my head is spinning a bit after the last discussion regarding Covian. Well, mine was spinning after I read those cases. Covian, Lopez, and so on. What's your thought on all of that? Well, my thought is simply this. A couple of points. The first is, I do believe that the ground of the objection to the sentencing enhancement has shifted quite a bit from what the original position was in the appellant's opening brief. I think the ground of objection there was, it wasn't proven or admitted to a jury the date of his deportation or his prior conviction. Frankly, I'm a little confused now which it was complained about. I would respectfully suggest that there was a kind of shotgun or scattershot approach to the objection to the sentencing enhancement. And now that some later 28J letters have been written, there have been some other cases, we've shifted grounds on the appellant's side to what was actually objectionable below. I would respectfully suggest that. I'm frankly not certain because it's very difficult, in my opinion, to wade through all the various kinds of grounds that are raised in the appellant's opening brief on this point. But my second point, regardless of Lopez, Covian, whether there's a conflict or not, I think it's agreed that Covian is the more stringent approach. And I would respectfully suggest that if that's the more stringent approach, this case passes muster with flying colors. And the reason I believe was suggested by Judge Tallman, and actually Judge Wilkin, which is there was only one deportation at issue. There was only one proven. The jury necessarily found Mr. Flores was deported on August 25th, 2008. Right. But if his argument is it has to be not only proven but also pled, then that's right. Correct. I don't think that's what the cases say. I frankly confess I'm not prepared to argue that. And I would, in detail on the various, the landscape of the cases, and I would suggest the Court needn't decide that. I would suggest that the ground of decision ought to be, even if Covian is the state of the law, the more strict state of the law, this case passes muster. I would suggest that if we're going to try to resolve an incipient or apparent conflict in this Court's cases, it's with another case, with more extensive briefing. And where the briefing has already, that issue has been raised from the very beginning. I don't think that's been the case here. So what you're saying is that the only real issue is whether Apprendi requires it to be proved in the indictment, because clearly the jury had the facts before it as to when the deportation occurred and when the reentry occurred. Right. There was only one deportation that was the August, that was proven to the jury. There was actually a removal later, but that never came up to the jury. So there was only one that the jury could find. The judge, Judge Moskowitz, had that date fixed in his head, and there was only, really there were only, all of his criminal convictions preceded that deportation. So why does the temporal sequence not have to be pled in the indictment? Well, I would respectfully suggest that nowhere has the Court said that prior, that this is something, well, the recidivism exception encompasses the Court finding the date and the existence of the conviction, and that the jury necessarily found he was deported on X date, August 25th, 2003. And the Court can use the jury's findings on the date of the deportation and the date of the conviction, those two dates are fixed, and increase the sentence. I mean, we've certainly said that you don't have to prove the quantity of the narcotics under 841A1 in order to enhance the sentence that will be imposed upon the defendant at sentencing. I don't disagree with that, Your Honor. But I guess what I'm really asking is, is this any different from drug quantity? I don't believe, well, I can't, I can't properly say I can answer that question. I don't really have an opinion on that question. I would suggest that the more, in the more limited context of the 1326 cases and dates of deportation, dates of prior conviction, we've got a jury fixing the date of the prior deportation proved beyond a reasonable doubt, and we've got really no dispute about the date of the, and a jury, and a court finding the date of the conviction. One, the deportation follows the conviction. There really isn't anything. I guess the argument would be whether or not, if there is a variance here between what the indictment alleges and what the jury found, where's the harm to the defendant? Because clearly, the only, in a single, single history of deportation case, there's only one prior deportation that the jury could necessarily consider. Your Honor, I would, this is a little bit of speculation, but I think that this is the direction that this whole universe of litigation is going, is to require the government to fix a date in the indictment of the deportation, so that then there can be more problems later on to appeal. It's proving that it really didn't occur on that date. On that date. It occurred on August 24th, 2003, rather than on some other date. And it's just, I'm not casting aspersions on anyone. I'm just suggesting that, as a tactical matter, the defense bar is, that's the goal. I have another area I want to ask about, but I don't want to change the subject if there's more on this. Could you address the likelihood, and this has to do with the prejudice from the failure to advise of the possible grounds for 212, the feasibility of the three things that he now says, or eventually said, could have flowed? That is to say, marry the girlfriend and get a adjustment that way, get the mother naturalized and get an adjustment that way, have the previous petition that the mother had filed as an LPR go through and get in that way. What is the prejudice? What is the likelihood or the speed with which any of those three things could have happened? Judge Volkin, you're focusing on one aspect of the prejudice, and that's the would he have an immediately available visa. Right. I'll answer the third question, part of that question first, which is, if he didn't get married to his girlfriend or his mother didn't become a citizen, I've looked at the visa bulletins up until today, and there's no way as a 2B preference category that he would be able to get a visa. Meaning that's the third one, the LPR petition. Yes. Which was for someone under 21, which by this time he wasn't anymore. Correct. But you're saying that even apart from that, that he wasn't going to get in that way? Right. Okay. What about the other two? The other two, here is my view on that. The cases upon which Mr. Flores relies are Drax v. Reno and Jimenez. I think it's Darmeland. Right. Now, in those cases, point one, the defendant's father was already a U.S. citizen. As distinguished from here, where the mother was an LPR at the time, and so far as I know, has yet to become a United States citizen. But could she have? I mean, how long would it have taken if she'd wanted to? I don't know the answer to that question. No clue? But I would suggest that it's incumbent upon the Mr. Flores to specify some timeline. I mean, in Drax, it was 15 months that it was calculated that the visa could have become available to the defendant. Well, first she has to get it naturalized. Right. And how long after that would it take before she could bring a son in? This is the problem. I don't know. And there's been no indication that there is any definite timeline for that to happen. Well, you can look on the website. There's priority dates. Oh, I misspoke, actually. I did look on the website for those priority dates. They do, if his January 1993 approval was, so to speak, the operative date, he would be up for a visa. But remember, that was granted under the other auspice. That is, that he was the son of an LPR. I don't know this for sure, but I suspect he would have to refile. Do you see what I'm saying? It's not like a ‑‑ I don't believe he gets the benefit of his previous attempt as an LPR son, LPR's son, that he would have to refile as now the son of a citizen. And that would have had to have happened around the time of his deportation. And those dates have not come up. I hope I'm making myself clear. Even still. Yes. That's correct. And I have the visa bulletins that I was able to obtain for that, if the Court wishes. Now, I think there was a ‑‑ I think we've addressed Parts 1 and 3. There was marrying the girlfriend. Oh, right. As I understand, that would have made him immediately available for a visa. Was that ‑‑ I think the ‑‑ doesn't the mother do better than the girlfriend in terms of dates? I look at the visa bulletins, and I don't think that's right, but I could be wrong. The point I would urge in this case, however, is that, I mean, if ever there were a candidate for not being married, it's this defendant, Flores, and this girlfriend. And I'll point to just one fact in the record. He came back after being deported on August 2003 and fathered a child by Marilyn Sparks. That's the second of the child's children that is supposedly going to be in extreme hardship. This postdates the deportation. He didn't marry her then. There's no indication in the record in her declaration that there was an intent to marry her. I mean, it's speculation, scent, hint, aroma of a marriage in the offing under the facts of this case, I would suggest. Well, he might have a pretty good reason to marry her if it meant he could stay. True, but that gets into the other issue, which I've tried to suggest in the brief, which is that really there's a problem there. And there's certainly a problem, in essence, requiring the immigration judge to say, hey, nudge, nudge, wink, wink, why don't you marry your girlfriend? All the immigration judge has to say is you're eligible for 212-H or 212-C or whatever it is at that moment. You're eligible for that relief. It doesn't mean you're going to get it. Right. You can apply. That's all he has to do. I think I understand the importance of your question, but I would suggest that that by itself wouldn't be sufficient. Because what would the immigration judge do? Just say, well, I think you're eligible for 212-H or 212-C, full stop? Isn't that the violation, the failure to advise him of an eligible? Yes. But the defendant's argument, I believe, is it would have had to have been for a purpose. It would have had to have been for a continuance, for something. I mean, imagine the immigration judge is saying, I think you're possibly eligible for 212-H relief. Full stop. Nothing else. What would he then be required to do? Continue it until infinity to, on no indication that anything is going to happen? Judge Wilken, I would suggest that's not a reasonable position. One could argue that he should continue it for some reasonable length of time while the person explores the possibilities and sees whether the mother could naturalize or this or that. Right. But that's why I'm suggesting that the immigration judge would actually have to have some back and forth about, well, what about your ---- Once he tells them that, the person can find out what you do about it. Right. But the other thing is he can appeal his case, which is what some of them have. And during that period of appeal, he could get the relief. Right. Understood. And if, in fact, as in Mr. Drax's case, he had married of his own accord, apparently, a United States citizen during the course of that appeal, that may, as the Second Circuit said, that should go to his benefit. That just hasn't happened here. And what I'm suggesting is that ---- I don't know how they get that information, because I don't think we could. I'm sorry? I said I don't know how they get that information. Suppose he had married during the appeal. We wouldn't take notice of that anyway, would we? In this case? No, in our court. They did in Drax. I mean, they ---- I know. They did. They did in Drax. But I'm just suggesting in response to Judge Wilkins' question that I don't think it can be right that the judge should just say, well, you might be eligible for 212H relief without any ---- and then I'm going to continue this matter until when and for what purpose. He's in deportation proceedings. Did he have a lawyer at this hearing? I don't know. No. I shouldn't say I don't know. He did not. And this was an expedited proceeding, right?  It was not. It was not. And actually, that's a good point, Your Honor. I had a panic attack last night because I had thought that ---- You aren't the only one trying to make sense out of all these cases. That the latest case, it's Gonzales, where it said ---- That's a good name for a case. We can find it. Yeah, we can find that one right away. Well, you would find out it's because the retroactivity of abolishing 212H relief. And I think that's the area that we're talking about. Yeah, but you've got to give us a different party than Gonzales. Maybe we can point at this Gonzales. There you go. It was decided in November of 2005. Okay. It's after ---- A guy named Gonzales was a party. And I have it in my packet. I can find it for the Court if you'd ---- Okay. The point I'm trying to make just is that this was not an expedited proceeding, and under the Arrieta case, it matters whether it was an expedited proceeding or not. And so I think this falls within the Arrieta line rather than the more recent line, which says this line of relief has been abolished. Okay. And I hope I've been helpful in that. You have been helpful. I don't know that we've gotten any solution to it. You've been helpful. That's for wiser heads than mine. Thank you. Thank you very much. You want to give us more help? Along the lines of perhaps helping to find a case, I did find the citation for Pacheco Zepeda. It's at 234 Fed 3rd, 411. And Covian cites that case at pin site 1096 of Covian, as does Castillo-Rivera at its pin site of 1024 to 25. Seeing how Castillo-Lopez and Covian are all relying on the same case to reject one proposition, I think this panel can say that's the proposition all three cases were addressing, which is separate from what Covian addressed in terms of the timing of the deportation. If the panel disagrees with that, I don't think it's something the panel can just push to one side. If there is an intra-circuit split, then there's an intra-circuit split. This issue has been raised in the opening brief. It was replied to by the government in its response brief. The argument that it failed, the government failed to allege the timing of the deportation and the indictment. And for that reason, solely that reason, Mr. Flores-Rodriguez's statutory maximum is 24 months, is briefed extensively in my reply brief, and then the government's letter under Rule 28J followed that. Kagan. Well, maybe the argument is that as part of the Almendra's exception to Apprendi is not only the fact of a prior conviction, but also the date of a prior conviction, and if the judge can properly find, without a jury finding, that there was a prior conviction, the judge can also find the date of that, and then since the jury necessarily found the date of the prior deportation, the judge's finding of the fact and date of the prior criminal conviction is passes muster under Almendra's. I have to disagree with the Court. Why? Because Covey and Sandoval says that the date of the deportation is subject to the rule of Apprendi, and all of that is true. But we don't need the date of the deportation. What we need is the date of the criminal conviction, and the judge can find that. The only way a prior conviction can be prior is if it precedes something. So with all respect, you do need the date of the deportation, because otherwise the date of the conviction is just hanging out there. And it has to be later. Well, you need it, but the jury has found there was a deportation, and since there's only one, it had to be that one. And I can only revert back to my argument that if, as Covey and says, the date of deportation is subject to the general rule of Apprendi, the Apprendi rights attached to that element, sentencing factor, that fact that increases the statutory maximum, one of the Apprendi rights is that it has to be pled in the indictment. There's two ways of finding out that something is before something else. One is to find the later date, and one is to find the earlier date. If it's okay for the judge to find the earlier date, and that that earlier date doesn't need to be alleged. The other is to find the relationship between the two. Right. And the question is whether there's no question that under Almondera's tort is if you just have an ordinary sentence enhancement, and you had to find out was there a conviction, when was it, the judge can do that. The question of when you have a case where an issue is whether one is before the other, you can tell the jury just find one, the judge is going to find the other, and then he's going to make, draw the conclusion of the relationship between the two. That doesn't necessarily follow from Almondera's tort is the judge can do all those things, but it may follow from our cases. Very briefly, and I know I'm well over, on the 212H, I believe marrying a United States citizen is Almondera's preference for a visa. Also, the standard is. Your girlfriend does better than the mom? I believe so. And I was searching through, and I wouldn't stake my life on it. Do you know about this business about whether the 1993 form would give, if his mother applied for citizenship now, does he get the benefit of the timing purposes of the 1993 form? Whether an application would relate back to 1993, I don't have an answer, and God, I wish I did, because I hadn't thought of it until I was sitting in that chair. I don't know the answer. The reason why the standard is plausible is because if you're advised potential relief and you've lived in this country for a long time, you might say, you know what, maybe I'm going to impose on my family, get a lawyer and figure out if I do have a shot. I'm not saying, I never said the immigration judge has to tell someone, marry your girlfriend, have your mom do this. What I say. But aren't you writing out the immediately available requirement? I don't think so, and I'm certainly not trying to. Well, I know you're not, but it's a two-step process. First, you have to apply, or get married, I guess, in this case, and then file an I-130 application form, and then it has to be granted so that it is immediately available. Now, Drax dealt with the problem by saying, well, we'll say it's immediately available by giving you a 15-month continuance, and how they do that is beyond me, but. Drax relies on the inherent power of immigration judges to do what's fair and just, and I believe they also cite to. But that does seem to fly in the face of the language of the statute that says it has to be But if I could just throw this. There has to be. In one case, it makes it clear it doesn't have to be immediate. We've got the one with the two months. It wasn't available at that time. It would become available. I agree. And I think. At least willing to stretch the words immediately that much. But in that case, there was a U.S. citizen father, right? Yes. Okay. However, that's a different question from whether it was immediately available. There's got to be. It wasn't immediately available. It would be in two months. There has to be some play in the word immediate, because otherwise 212H relief wouldn't make a lot of sense, because anyone with a visa immediately available, you might assume would take advantage of that visa, and then we'd be in 212C proceedings or looking for 212C relief, because you would have status. There's got to be an ability of an immigration judge to grant relief from deportation under 212H and then allow that person to stay in the country if there's a visa immediately available. I would be shocked if the law would be that an immigration judge said, I grant you relief under 212H, and if you don't have a visa in your back pocket, you're nonetheless being deported. And I cite Drax and the other case from the United Circuit, I can't remember the name off the top of my head, for the proposition that continuances can be granted to allow people to secure a visa if they can in a timely manner. What if there's no continuance and it's just an appeal, and he does it during the appeal? I think Drax stands for the proposition that if that were the case and Mr. Flores had appealed, and on appeal there was found to be a due process violation, so it was remanded back to immigration proceedings, that he would have had. No, no, no, no violation. I mean, if during the period of the appeal, let's say the mother, he was advised of the availability of this relief. He says to his mother, go ahead, get your citizenship, which would only take, I think it was seven months, and the appeal takes two years. And during that period, he becomes eligible, or, you know, let's say his application is recognized, and it would be immediately available, as counsel said, if you recognize the 93-1. And then he got his status adjusted while the appeal was going on. Would that moot the deportation order? I think it would. And I think Drax stands for that proposition. And you don't really need to stay. All you need to do is ask that, because it seemed to me I'd seen cases in the past where they said he could have done it during the period of appeal. I agree. He would have gotten the benefit of the changed circumstances while on appeal. And I think Drax stands for that proposition. Unfortunately, due to the immigration judge's misadvisal, Mr. Flores has involuntarily and unknowingly waived his right to appeal. All right. It's nice and simple, like all the immigration cases. Thank you both very much. The argument was helpful. Of course, we'll stand and recess for the day.
judges: Reinhardt, Tallman Wilken